Slip Op. 07 - 38

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - -x

FORMER EMPLOYEES OF FAIRCHILD SEMI-    :
CONDUCTOR CORP.,
                                       :

                    Plaintiffs,
                                       :

          v.                             Court No. 06-00215
                                       :

UNITED STATES SECRETARY OF LABOR,
                                       :

                    Defendant.
                                       :
- - - - - - - - - - - - - - - - - - - x


                    Memorandum & Order

[Remand to defendant for reconsideration
 of negative determination(s) regarding
 eligibility for trade-adjustment assistance.]



                              Decided:  March 13, 2007



          Robert R. Petruska, *pro se*.

          Peter D. Keisler, Assistant Attorney General; Jeanne E.
Davidson, Director, Patricia M. McCarthy, Assistant Director,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (Jeffrey S. Pease); and Office of the Solicitor, U.S.
Department of Labor (Vincent Costantino), of counsel, for the
defendant.


          AQUILINO, Senior Judge:    In  necessarily  denying

plaintiffs' motion for leave to proceed *in forma pauperis* herein

per slip opinion 06-173, 30 CIT ___ (Nov. 21, 2006), the court

nevertheless confirmed its commitment to timely review their instant appeal from the Negative Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance And Alternative Trade Adjustment Assistance of the Employment and Training Administration ("ETA"), U.S. Department of Labor, TA-W-58,624 (Feb. 28, 2006).[1]  It has now done so.

I

Jurisdiction is based upon 28 U.S.C. §§ 1581(d)(1) and 2631(d)(1), which refer to

> any final determination of the Secretary of Labor under section 223 of the Trade Act of 1974 with respect to the eligibility of workers for adjustment assistance under such Act[.]

That section 223, 19 U.S.C. §2273, requires the Secretary to determine whether a petitioning group of workers meets the requirements of preceding section 2272 and to issue a certification of eligibility to apply for trade-adjustment assistance under that act.  That certification ensues, in general, if it is determined that

> (1) a significant number or proportion of the workers in such workers' firm, or an appropriate

---

[1] That slip opinion offered the plaintiffs the opportunity to present or re-present their arguments in support of their requested relief on the merits.

subdivision of the firm, have become totally or partially separated, or are threatened to become totally or partially separated; and

(2)(A)(i) the sales or production, or both, of such firm or subdivision have decreased absolutely;

(ii) imports of articles like or directly competitive with articles produced by such firm or subdivision have increased; and

(iii) the increase in imports described in clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision; or

(B)(i) there has been a shift in production by such workers' firm or subdivision to a foreign country of articles like or directly competitive with articles which are produced by such firm or subdivision; and

(ii)(I) the country to which the workers' firm has shifted production of the articles is a party to a free trade agreement with the United States;

(II) the country to which the workers' firm has shifted production of the articles is a beneficiary country under the Andean Trade Preference Act, African Growth and Opportunity Act, or the Caribbean Basin Economic Recovery Act; or

(III) there has been or is likely to be an increase in imports of articles that are like or directly competitive with articles which are or were produced by such firm or subdivision.

19 U.S.C. §2272(a).

A

The administrative record ("AR") filed herein contains an

ETA <u>Certification Regarding Eligibility To Apply for Worker</u>

<u>Adjustment Assistance and Alternative Trade Adjustment Assistance</u>,

TA-W-53,335 (Dec. 2, 2003), to wit:

> All workers of Fairchild Semiconductor Corporation, Mountaintop, Pennsylvania, who became totally or partially separated from employment on or after December 1, 2003 through two years from the date of certification are eligible to apply for adjustment assistance under Section 223 of the Trade Act of 1974, and are also eligible to apply for alternative trade adjustment assistance under Section 246 of the Trade Act of 1974.

AR, p. 38. On its face, the <u>Certification</u> was restricted to a

period that ended on December 1, 2005. Among other things, it

pointed out that Fairchild workers produced discrete semiconductor

devices; that ETA's investigation revealed that company sales and

employment decreased absolutely during January to September 2003

when compared to the same period in 2002; that the preponderance in

declines in Fairchild employment were related to a shift in

production of discrete semiconductor devices to Korea and China;

and that the agency had determined that company imports of those

devices were likely to increase. See id. at 36-37.

That Certification also noted that Fairchild workers had been previously certified as eligible to apply for trade-adjustment assistance per petition number TA-W-40,054, which expired November 30, 2003.  See id. at 37.

B

Whereafter, on or about January 11, 2006, the petition on ETA Form 9042A (Rev. 11/05) for similar relief (and which underlies the matter now at bar) was lodged with the agency, numbered TA-W-58,624.  See id. at 3-5.  It was posited on behalf of seven Fairchild workers who have been or will be laid off, with the articles produced at the firm again stated to be "Discrete Semic[on]ductor Devices".  Id. at 3.

Unlike the results of the ETA investigations engendered by the preceding two petitions on behalf of Fairchild workers, number TA-W-58,624 led to the Negative Determinations at issue herein.  With regard to certification under 19 U.S.C. §2272(a), supra, the agency concluded that the criteria of subsections (2)(A)(ii) & (iii) and (2)(B)(ii) thereof had not been met *viz.*:

> . . . The workers at the subject firm produce semiconductor wafers. . . . The investigation revealed that all semiconductor wafers manufactured at the Mountain Top, Pennsylvania plant are exported for further processing into discrete semiconductor devices manufactured overseas.

> The investigation further revealed that the subject firm did not import semiconductor wafers during the period under investigation.
>
> The investigation also revealed that plant production of semiconductors [*sic*] wafers is being consolidated into another Fairchild facility located in China. It has been determined that no articles like or directly competitive with semiconductor wafers produced by the subject plant will be imported back to the United States.

Id. at 42-43. Whereupon the ETA pointed out that workers denied eligibility to apply for trade-adjustment assistance under section 223 of the Trade Act of 1974 cannot be certified eligible for alternative-trade-adjustment assistance pursuant to section 246 of that act, 19 U.S.C. §2318.

The petitioners were duly advised that they could request administrative reconsideration by ETA within 30 days after publication of the Negative Determinations in the Federal Register. And they did so request, alleging that the agency statement quoted above that "all semiconductor wafers manufactured at the Mountain Top . . . plant are exported for further processing into discrete semiconductor devices manufactured overseas" is "incorrect"[2]:

> The . . . Pennsylvania plant manufactures semiconductor wafer chips. After the product leaves our

---

[2] AR, p. 57.

facility, it is sent overseas to either be immediately
sold as a bare die device or placed into a package. Even
when the chip is placed in a package, the essence of the
device is never changed or altered from when it left our
facility; it is simply cut and placed into a package
before it returns to the U.S. for sale. In all
instances, the device is completely functional with or
without the package. Also, in each case, the device when
imported back to the U.S. is both like and directly
competitive to the semiconductor wafer chips produced by
the Mountain Top . . . facility.

Furthermore, if the comment[] . . . were accurate
(". . . all semiconductor wafers . . . are exported for
further processing into discrete semiconductor devices
manufactured overseas[]"), then no U.S. semiconductor
wafer facility could ever be approved for TAA benefits
because no U.S. semiconductor wafer facility imports
discrete wafers, they import the chips. However, past
TAA applications have been approved for wafer fabrication
facilities.[3]

\* \* \*

Lastly, when the layoff occurred in January of 2006,
the duties, services and products designed by our staff
were moved to an overseas location, thus contributing
directly and importantly to those employees['] separation.

AR, pp. 57-58.

This request for reconsideration was dismissed by ETA on

the ground that it

did not contain new information supporting a conclusion
that the determination was erroneous, and also did not
provide a justification for reconsideration of the
determination that was based on either mistaken facts or
a misinterpretation of facts or of the law.

Id. at 63.

_____

[3] Id., citing and discussing ETA determinations in matters
numbered TA-W-56,077 and [id. at 58] TA-W-52,099.

Underlying this dismissal was agency reasoning that:

> The current investigation established that the subject firm exported all semiconductor wafers manufactured at the subject firm during the relevant time period and there was no shift in production of semiconductor wafers abroad.
>
> Furthermore, the review of the initial investigation revealed that an insignificant amount of layoffs were administered or scheduled at the subject facility during the relevant time period. Since the expiration of the previous certification of the subject firm on December 2, 2005, the subject firm laid off less than five percent of its employees and because employment levels at the subject facility did not decline significantly in the relevant period, criterion (1) has also not been met.

Ibid. at 61.

C

That statutory criterion, 19 U.S.C. §2272(a)(1), supra, must be met, of course, before there need be any analysis of the further factors for certification set forth in subsection (2). According to 29 C.F.R. §90.2:

> *Significant number or proportion of the workers* means that:
>
> (a) In most cases the total or partial separations, or both, in a firm or appropriate subdivision thereof, are the equivalent to a total unemployment of five percent (5 percent) of the workers or 50 workers, whichever is less; or
>
> (b) At least three workers in a firm (or appropriate subdivision thereof) with a work force of fewer than 50 workers would ordinarily have to be affected.

The implication of plaintiffs' current pleading is that they comprised 100 percent of the remaining subdivision of workers covered by defendant's previous certification[s] that expired on December 1, 2005.  To quote *pro se* plaintiff Petruska's "fact 8", for example:

> Appeal group, terminated 1/21/2006, and participated in the overseas production transfer that affected the terminated personnel in the approved TAA Decision #53335. We were detained until the production transfer was completed at the end of 2005.

If this, in fact, is this case, then the court is constrained to remand the matter to the defendant for reconsideration of the merits of its denial of the very same trade-adjustment relief afforded plaintiffs' similarly-situated predecessors at work at Mountain Top.  That reconsideration must attempt to reconcile the statement in the <u>Negative Determinations</u> that the underlying investigation

> revealed that plant production of semiconductor[] wafers is being consolidated into another Fairchild facility located in China[4]

with the subsequent agency afterthought that "there was no shift of production of semiconductor wafers abroad."  That reconsideration must also attempt to "cogently explain"[5] how the data adduced on

---

[4] AR, p. 43.

[5] <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co</u>., 463 U.S. 29, 48 (1983).

the record do not, in fact, tend to satisfy 19 U.S.C. §2272-(a)(2)(A)(ii) & (iii) and (2)(B)(ii) for certification of eligibility.

## II

The defendant may have until April 27, 2007 for such reconsideration and to report the results thereof to the plaintiffs and the court.

So ordered.

Decided:  New York, New York
          March 13, 2007


                                    /s/ Thomas J. Aquilino, Jr.
                                         Senior Judge